IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-69886-LRC |
| RICHARD CHRISTOPHER KOSKEY, | CHAPTER: 13 |
| Debtor. | JUDGE: LISA RITCHEY CRAIG |
| WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3, ASSET-BACKED CERTIFICATES, SERIES 2006-3, | CONTESTED MATTER |
| Movant, | |
| v. | |
| RICHARD CHRISTOPHER KOSKEY, Debtor MELISSA J. DAVEY, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 1:15 P.M., on May 8, 2018.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-69886-LRC |
| RICHARD CHRISTOPHER KOSKEY, | CHAPTER: 13 |
| Debtor. | JUDGE:  LISA RITCHEY CRAIG |
| WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3, ASSET-BACKED CERTIFICATES, SERIES 2006-3, | CONTESTED MATTER |
| Movant, | |
| v. | |
| RICHARD CHRISTOPHER KOSKEY, Debtor MELISSA J. DAVEY, Trustee, | |
| Respondent(s). | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 272 NE 14th St, Atlanta, Georgia 30309-3659.

3.      There has been a default in mortgage payments which have come due since this case was filed. As of April 17, 2018, five (5) post petition payments of $1,134.57 each, less suspense funds of $900.00, for a total amount of $4,772.85, have been missed. In addition, the

following post petition fees have incurred: Preparation and filing of Objection to Confirmation of $500.00; Review of Chapter 13 Plan of $150.00; and Preparation and filing of Fee Notice of $150.00.

4.     The unpaid principal balance is $174,967.24, and interest is due thereon in accordance with the Promissory Note.

5.     On or about March 8, 2012, Debtor executed an agreement to modify the loan.

6.     Because of the default and clear inability to make all required payments, Movant is not adequately protected.

7.     Because the Loan Documents so provide, Movant is entitled to reasonable attorney's fees.

8.     Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim.

9.     Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

10.    Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for Relief for Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2006-3, Asset-Backed Certificates, Series 2006-3, and is entitled to proceed accordingly.  Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2006-3, Asset-Backed Certificates, Series 2006-3. Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2006-3, Asset-Backed Certificates, Series 2006-3 has the right to foreclose because it is the original mortgagee or beneficiary or assignee of the

security instrument for the referenced loan.  Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2006-3, Asset-Backed Certificates, Series 2006-3, directly or through an agent has possession of the promissory note and the promissory note is either made payable to Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2006-3, Asset-Backed Certificates, Series 2006-3, or has been duly endorsed.

11.    Movant requests that upon entry of an Order Granting this Motion and Lifting the Stay, the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that the secured portion of Movant's claim be deemed withdrawn without prejudice to Movant's right to file  an amended unsecured claim for any deficiency and that absent a stipulation or order to the contrary, Movant shall return to the Chapter 13 Trustee any payments received from the Trustee on account of Movant's secured claim, after entry of an Order Granting this Motion.

12.    Movant requests that it be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and resolutions, as appropriate with regard to the underlying Security Deed and Note, including, but not limited to loan modification or other loss mitigation alternatives.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes, and for an award of reasonable attorney's fees.  Movant also prays that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives

for the purpose of engaging in discussions and consideration for possible loss mitigation options,

and for such other and further relief as is just and equitable.

_____
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

Date:    08/01/06

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

272 NE 14TH ST, ATLANTA, GA 30309-3659
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.    $160,000.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
SUNTRUST MORTGAGE INC, A VIRGINIA CORP,    A VIRGINIA CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid.  Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of    9.850%    . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   October 01    ,   2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
September 01    ,    2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    SUNTRUST MORTGAGE INC, A VIRGINIA CORP
PO BOX 79041, BALTIMORE, MD 212790041
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.    $1,386.41    . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of    September 01    ,    2008    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 10/100    percentage point(s) ( 6.100%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

GANT0021.wp (09-30-02)

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   12.850%   or less than   9.850% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than   15.850%   or less than   9.850%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.      BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

**6.      LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.      BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.      GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.      OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

GANT6022.wp (09-30-03)

Date:  08/01/06

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
RICHARD    KOSKEY                        -Borrower                                                    -Borrower

_____ (Seal)        _____ (Seal)
                                                  -Borrower                                                    -Borrower

_____ (Seal)        _____ (Seal)
                                                  -Borrower                                                    -Borrower

[Sign Original Only]

GANT0023.wp (09-30-02)

**ALLONGE TO NOTE**

**This endorsement is a permanent part of the Note in the amount of $160,000.00**

**NOTE DATE:  August 1, 2006**

**BORROWER NAME: RICHARD KOSKEY**

**PROPERTY:  272 NE 14TH ST, ATLANTA, GA 30309-3659**

**PAY TO THE ORDER OF:**

**WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE
MORTGAGE LOAN TRUST 2006-3, ASSET-BACKED CERTIFICATES, SERIES 2006-3**

**WITHOUT RECOURSE**

**WELLS FARGO BANK, N.A. AS TRUSTEE BY ITS ATTORNEY IN FACT OCWEN LOAN
SERVICING, LLC**

**Signer:**
**Title:**                      Michelle Gbolie
                                    Authorized Signer

Date:  08/01/06

## PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by Borrower in favor of:

SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION

(the "Lender"), and dated as of even date herewith (the "Note").  To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provision of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

Section 5 of the Note is amended to read in its entirety as follows:

5.      **Borrower's Right to Prepay**
    I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
    If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
    If within   24 Months     from the date of execution of the Security Instrument I make a full prepayment or, in certain cases, a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge if authorized by state or federal law. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note.


| | | | |
|---|---|---|---|
| Borrower RICHARD KOSKEY _____ Date | | Borrower _____ Date | |
| Borrower _____ Date | | Borrower _____ Date | |
| Borrower _____ Date | | Borrower _____ Date | |

*(Sign Original Only)*

MULTISTATE PREPAYMENT CHARGE NOTE ADDENDUM - Adjustable Rate Note
Page 1 of 1                                                          GAP1021.wp (10-25-02)

08/01/06

# ALLONGE TO NOTE
## (CORONE LENDER)

This allonge makes reference to the following Note:

Borrowers: RICHARD   KOSKEY

Property Address: 272 NE 14TH ST, 6 ATLANTA, GA 30309-3659
Loan Amount: $160,000.00

Note Date: 08/01/06

Pay to the order of:          OPTION ONE MORTGAGE CORPORATION,   A CALIFORNIA CORPORATION
                                        Without Recourse

By: SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION

X *Clara Hester*
Authorized Signer's Name

*Clara Hester*
Print Signer's Name

*Officer*
Print Signer's Title

Page 1 of 1                                                                    USD3051.wp (09-02-04)

Date: 08/01/06

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: RICHARD  KOSKEY

Property Address: 272 NE 14TH ST, 6 ATLANTA, GA 30309-3659
Loan Amount: $160,000.00

Note Date: 08/01/06

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:    **Wells Fargo Bank, N.A., as Trustee**

                                                Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
      Jacki Davis

      Assistant Secretary

USD3050.wp (03-14-03)

Deed Book 43193 Pg 506
Filed and Recorded Aug-08-2006 08:29am
2006-0268588
Georgia Intangible Tax Paid $480.00
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

**FERGUSON MCMANAMY**
**ATTORNEYS AT LAW, LLC**
**100 ASHFORD CENTER NORTH**
**SUITE 120**
**ATLANTA, GA  30338**

AFTER RECORDATION RETURN TO:
SUNTRUST MORTGAGE INC MAIL CODE RVW 4444
1001SEMMES AVE
RICHMOND, VA  23224

Loan Number:
Servicing Number:

[Space Above This Line For Recording Data]

## SECURITY  DEED

THIS SECURITY DEED ("Security Instrument") is given on      August 01, 2006          . The grantor is
RICHARD ROSKEY, A SINGLE MALE

("Borrower"). This Security Instrument is given to
       SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION

which is organized and existing under the laws of                  VIRGINIA             , and whose
address is
    901 SEMMES AVENUE, RICHMOND, VA  23224
                                      ("Lender"). Borrower owes Lender the principal sum of
              ONE HUNDRED SIXTY THOUSAND
               . . .AND NO/100ths      Dollars (U.S. $160,000.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on    September 01, 2036           .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns,
with power of sale, the following described property located in          Fulton            County, Georgia:
0017-0106-0003-025

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of     272 NE 14TH ST, ATLANTA
                                                                          [Street, City],
Georgia       30309-3659           ("Property Address");
              [Zip Code]

GEORGIA-Single Family                                              GAD10011 (07-07-06)
Page 1 of 6

Loan Number: ████████  Servicing Number: ████████    Date: 08/01/06

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender

Page 2 of 6                                    GAD10012 (07-07-06)

Deed Book 43193 Pg 507

Deed Book 4193 Pg 508

Loan Number: ▮▮▮▮▮    Servicing Number: ▮▮▮▮▮    Date: 08/01/06

may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instruments; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall

GAD10013 (07-07-06)

Loan Number: ▓▓▓▓▓    Servicing Number: ▓▓▓▓▓    Date: 08/01/06

be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property, of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law

Page 4 of 6    GAD10014 (07-07-06)

Loan Number: █████    Servicing Number: █████    Date: 08/01/06

**Deed Book 43193 Pg 510**

of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows.

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other security deed or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

24. Assumption not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

25. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

26. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

27. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

28. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

29. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

30. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

Page 5 of 6                                                                                                    GA01015 (07-07-06)

Loan Number: ████████    Servicing Number: ████████    Date: 08/01/06

**31. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**32. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**33. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**34. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] No Prepayment Penalty Option Rider | [ ] Planned Unit Development Rider | [ ] Occupancy Rider |
| [X] Waiver of Borrower's Rights Rider | [ ] | |
| [ ] Other(s) (specify) | | |

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____ (Seal)
RICHARD  KOSKEY                    -Borrower

Unofficial Witness

_____ (Seal)
                                   -Borrower

Davis R. Dixon Jr
My Commission DD188791
Expires December 02, 2008
Notary Public.                    BROWARD County

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

Page 6 of 6                                    GAD10016 (07-07-06)

Deed Book 43193 Pg 511

Loan Number: ████████          Servicing Number: ████████          Date: 08/01/06

## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES. THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
                                          RICHARD   KOSKEY             (Borrower)

Davis R. Dixon Jr
My Commission DD168791                    _____ (Seal)
Expires December 02, 2008   Notary Public                            (Borrower)

                                          _____ (Seal)
                                                                     (Borrower)

                                          _____ (Seal)
                                                                     (Borrower)

                                          _____ (Seal)
                                                                     (Borrower)

                                          _____ (Seal)
                                                                     (Borrower)

                                          _____ (Seal)
                                                                     (Borrower)

                                                          GAD0071.wp (12-30-05)

Page 1 of 1

Loan Number: [redacted]   Servicing Number: [redacted]   Date:   08/01/06

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made   August 01, 2006   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:          272 NE 14TH ST, 6 ATLANTA, GA 30309-3659

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:          PARK VIEW

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B.   Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:
(i) Lender waives the provision in Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and
(ii) Borrower's obligation under Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.
Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage.
In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C.   Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential,

MULTISTATE CONDOMINIUM RIDER—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT          Form 3140 9/90
Page 1 of 2                                                                                                          USRI0101.wp (11-19-04)

Deed Book 43936 Pg 514

Loan Number: ▮▮▮▮   Servicing Number: ▮▮▮▮   Date: 08/01/06

payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____   _____
RICHARD   KOSKEY              -Borrower                           -Borrower

_____   _____
                              -Borrower                           -Borrower

_____   _____
                              -Borrower                           -Borrower

MULTISTATE CONDOMINIUM RIDER--Single Family--FNMA/FHLMC UNIFORM INSTRUMENT FORM 3140 9/90
Page 2 of 2                                                      USRI0102.wp (11-19-04)

Loan Number: ███████  Servicing Number: ███████  Date: 08/01/06

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made August 01, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

272 NE 14TH ST, 6 ATLANTA, GA 30309-3659

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of 9.850% . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the first day of September 01 2008 ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 10/100 percentage point(s) ( 6.100% )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3

USRI0021 (02-23-99)

Loan Number: ███████    Servicing Number: ███████    Date: 08/01/06

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.850% or less than 9.850% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 15.850% or less than 9.850%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3

USRI0022 (02-23-99)

Deed Book 43593 Pg 517

Loan Number: ▉▉▉▉▉▉   Servicing Number: ▉▉▉▉▉▉   Date:  08/01/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
RICHARD   KOSKEY

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3                                              USRI0023 (02-23-99)

Deed Book 43193 Pg  519

EXHIBIT "A"
LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND
LOT 106 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, AND
BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

CONDOMINIUM UNIT 6 OF PARK VIEW CONDOMINIUM, A
CONDOMINIUM, AS MORE PARTICULARLY DESCRIBED AND
DELINEATED IN THE DECLARATION OF CONDOMINIUM FOR PARK
VIEW CONDOMINIUM, A CONDOMINIUM, RECORDED IN DEED BOOK
30925, PAGE 31, ET SEQ., FULTON COUNTY, GEORGIA RECORDS AS
MAY BE AMENDED

THIS CONVEYANCE IS MADE SUBJECT TO THE DECLARATION AND
ALL MATTERS REFERENCED THEREIN, ALL MATTERS SHOWN ON THE
PLAT RECORDED IN CONDOMINIUM PLAT BOOK 14, PAGE 91, FULTON
COUNTY, GEORGIA RECORDS AS MAY BE AMENDED, AND THE FLOOR
PLANS RECORDED IN CONDOMINIUM FLOOR PLAN BOOK 15, PAGES
131-135, AFORESAID RECORDS AS MAY BE AMENDED.

Deed Book 43193 Pg 520

| Loan Number: | Servicing Number: | Date: 08/01/06 |

## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

_____

Davis R. Dixon Jr
My Commission DD168791
Expires December 02, 2008    Notary Public

_____ (Seal)
RICHARD   KOSKEY            (Borrower)

_____ (Seal)
                           (Borrower)

_____ (Seal)
                           (Borrower)

_____ (Seal)
                           (Borrower)

_____ (Seal)
                           (Borrower)

_____ (Seal)
                           (Borrower)

Page 1 of 1                                    GAD0071.wp (12-30-05)

Loan Number: ▮▮▮  Servicing Number: ▮▮▮  Date: 08/01/06

Deed Book 43193 Pg 521
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HREEOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

_____  _____ (Seal)
Davis R. Dixon Jr                RICHARD KOSKEY                   (Borrower)
My Commission DD168791
Expires December 02, 2006    Notary Public

_____ (Seal)
                                (Borrower)

_____ (Seal)
                                (Borrower)

_____ (Seal)
                                (Borrower)

_____ (Seal)
                                (Borrower)

_____ (Seal)
                                (Borrower)

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me
on the date set forth above.

_____  _____
Davis R. Dixon Jr   Notary Public  FERGUSON MCKENNEY   Closing Attorney
My Commission DD168791
Page 1 of 1   Expires December 02, 2006      GAD0051.wp (04-04-03)

Deed Book 44838 Pg  228
Filed and Recorded Apr-16-2007 07:34am
2007-0115413
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

*Prepared by: Option One Mortgage Corp.*
*& When Recorded Return to: Assn Dept.* 1
*American Document Services, Inc.*
*250 Commerce 2nd Floor*
*Irvine, CA 92602     PROJECT 632*
*(888)477-4780*

This Instrument Prepared By:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

Loan Number: ▮▮▮▮▮▮▮▮
Servicing Number: ▮▮▮▮▮▮▮▮

[Space Above This Line For Recording Data] _____

## ASSIGNMENT OF SECURITY DEED

**STATE OF**  Georgia
**COUNTY OF**  Fulton

For value received,
  SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION
                                                              , has this day transferred,

sold, assigned, conveyed and set over to
          Option One Mortgage Corporation, a California Corporation
a corporation organized and existing under the laws of      CALIFORNIA
whose address is                        3 Ada, Irvine, CA  92618                    ,as Assignee,
its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed or (Deed to Secure Debt)
executed by:  RICHARD KOSKEY, A SINGLE MALE

to   SUNTRUST MORTGAGE INC, A VIRGINIA CORP, A VIRGINIA CORPORATION *506, INSTR No 2006-0268588*
Dated     August 01, 2006           , recorded in Deed Book *43193*     , Page 506 *RECORDED ON; 08-08-2006*
          Fulton                    County, Georgia Records.
The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and
assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the powers,
options, privileges and immunities therein contained.

### LEGAL DESCRIPTION AS DESCRIBED ON SECURITY DEED REFERRED TO HEREIN
        The Assignor herein has this day sold and assigned to the Assignee herein the note secured by the aforesaid Security Deed
and this transfer is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.
IN WITNESS WHEREOF, the undersigned Assignor has hereunto set its hand and seal this *6th*
day of *August. 2006.*

SUNTRUST MORTGAGE INC, A VIRGINIA CORP,
A VIRGINIA CORPORATION

Witness *Cassandra Clayton*                                (Assignor)

Witness *Michelle Brown*          By: X *Clara Hester*
                                              (Signature)

Atest *Sonja Wynn*               By: *Clara Hester, Officer*
Seal:                                    Print Name & Title

[Space Below This Line For Acknowledgment] _____

Signed, sealed and delivered in the presence of

*Katina Temple*                  ┌─────────────────────────┐
                                 │   KATINA TEMPLE         │
Notary Public *Mr*               │   Notary Public         │
State of Georgia  *Virginia*     │ Commonwealth of Virginia│
                                 │ My Commission Expires Oct 31, 2009 │
My commission expires:           └─────────────────────────┘
*10/31/09*

Georgia Assignment of Security Deed with Acknowledgment
Page 1 of 1                                              GAA0501.wp (12-15-05)

Deed Book 58254 Pg  614
Filed and Recorded Dec-12-2017 08:23am
2017-0347506
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

Recording Requested By: OCWEN LOAN SERVICING, LLC
When Recorded Return To: OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402

## CORPORATE ASSIGNMENT OF SECURITY DEED

Fulton, Georgia
SELLER'S SERVICING #: ▮▮▮▮ "KOSKEY" WDE
SELLER'S LENDER ID#: DW SCI
OLD SERVICING #: ▮▮▮▮▮

Date of Assignment:  DEC 0 6 2017

Assignor: SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION at C/O OCWEN LOAN SERVICING, LLC, 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Assignee: WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3, ASSET-BACKED CERTIFICATES, SERIES 2006-3 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409

Executed By: RICHARD KOSKEY, A SINGLE MALE  To: SUNTRUST MORTGAGE, INC.
Date of Security Deed:  08/01/2006 Recorded:  08/08/2006  in Book/Reel/Liber: 43193 Page/Folio: 506 as Instrument No.:: 2006-0268588  In the County of Fulton, State of Georgia.

Assessor's/Tax ID No. 0017-0106-0003-025

Property Address: 272 NE 14TH ST, ATLANTA, GA  30309-3659

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $160,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION

On  DEC 0 6 2017

By: _____
     Farid Earnhall
     Vice President

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS
_____
     Amanda E. Jordan

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

Deed Book 53254 Pg  615
CATHELENE  ROBINSON
Clerk of Superior Court
Fulton County, Georgia

NOTARY WITNESS

STATE OF FLORIDA
COUNTY OF PALM BEACH

Subscribed and sworn to (or affirmed) before me on  DEC 0 6 2017 , by _____**Farid Farghali**_____ , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

Stephanie White

Notary Expires: SEP 1 8 2020

Notary Public State of Florida
Stephanie White
My Commission GG 031131
Expires 09/18/2020

(This area for notarial seal)

Loan Modification Agreement
Schedule A

Name of Borrower(s): RICHARD KOSKEY
Loan Number ▇▇▇▇▇▇

| DESCRIPTION OF TOTAL AMOUNT DUE | AMOUNT DUE |
|---|---|
| Current Principal Balance | $158,070.17 |
| Total Amount Capitalized | $48,338.15 |
| **NEW PRINCIPAL BALANCE** | **$206,408.32** |

| ITEMIZATION OF AMOUNT DUE | | | Deferred Amount | Total Amount Due |
|---|---|---|---|---|
| Principal Reduction | | | | $0.00 |
| Delinquent Interest | From | 09/01/2008 | | |
| | To | 05/31/2010 | $0.00 | $27,247.29 |
| Modification Fee / Document Preparation Fee | | | $468.25 | $650.00 |
| Property Inspections | | | $0.00 | $96.00 |
| Property Valuations | | | $0.00 | $690.00 |
| Borrower Interview | | | $0.00 | $65.00 |
| Accrued Late Charges | | | $762.52 | $762.52 |
| Interest on Secured Advances | | | $0.00 | $54.50 |
| Foreclosure Attorney Fees | | | $0.00 | $2,040.00 |
| Foreclosure Costs | | | $0.00 | $2,296.48 |
| Title Report / Policy | | | $0.00 | $50.00 |
| Delinquent Taxes / Unpaid Insurance | | | $0.00 | $15,798.88 |
| **TOTALS** | | | **$1,230.77** | **$49,750.67** |

| | |
|---|---|
| Borrower Contribution | $181.75 |
| Mortgage Insurance Contribution | $0.00 |
| Total Deferred Amount | $1,230.77 |
| Amt Towards 1st Due Pmt | $0.00 |
| Total Amount Capitalized | $48,338.15 |

| | |
|---|---|
| **New Principal and Interest Payment Effective: ** 07/01/2010** | **$842.79** |
| Monthly Tax Payment *** | $322.34 |
| Monthly Insurance Payment *** | $0.00 |
| **Total Payment** | **$1,165.13** |

**\*\* If your loan contains an variable rate feature, your monthly principal and interest payment is subject to
change based on the terms of the Note and Modification Agreement.**

**\*\*\* Includes estimated amount for the monthly escrow payment (which is subject to change).**

Borrower Initials here: _____ _____ _____ _____ _____
_____

**Loan #** 
**Min #**

# LOAN MODIFICATION AGREEMENT
### (Providing for Freeze-Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 1st day of June, 2010 (the "Effective Date"), between RICHARD  KOSKEY (collectively "Borrower") and American Home Mortgage Servicing, Inc. as Servicer ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated August 1st, 2006, and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which covers the real and personal property located at 272NE14TH ST, ATLANTA, GA 30309, more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower hereto agree that the Note and Security Instrument shall be modified hereby as follows:

1. As of June 01, 2010, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $ 206,408.32, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof. The amount that shall bear interest and amortize in accordance with the terms of this Agreement is referred to herein as the "Amortizing Amount," which may be equal to or less than the New Principal Balance, as specified in paragraph 2 below.

2. Borrower promises to pay the New Principal Balance, plus interest, to the order of Loan Servicer.  The interest rate and monthly payment on Borrower's Note, and the applicable interest change dates and payment due dates, are modified as follows:

| Year | New Interest Rate | Interest Rate Change Date | New Monthly Payment Due Date | New Payment Amount | Number of Payments |
|------|-------------------|---------------------------|------------------------------|--------------------|--------------------|
| 2010 | 2.000 % | 06/01/2010 | 07/01/2010 | $842.79* | 60 |
| 2015 | 3.000 % | 06/01/2015 | 07/01/2015 | $928.74* | 12 |
| 2016 | 4.000 % | 06/01/2016 | 07/01/2016 | $1,015.76* | 12 |
| 2017 | 5.000 % | 06/01/2017 | 07/01/2017 | $1,103.29* | 12 |
| 2018 | 5.080 % | 06/01/2018 | 07/01/2018 | $1,110.16* | 219 |

*plus any amounts due for taxes and insurance, if applicable (see Schedule A).

If the Loan is an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the first New Monthly Payment Due Date indicated above, Borrower should ignore such notice and make payments in accordance with this Agreement.  If on September 01, 2036(the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. Borrower will comply with all covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Effective Date:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and



(b)  all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

4.  Borrower understands, acknowledges and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Note and Security Instrument shall also apply to default in the making of the modified payments under this Agreement.

(b)  Except as herein modified, all covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect and none of Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Loan Servicer's or Note Holder's rights or remedies under the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Loan Servicer and Note Holder are presently entitled against the Property, Borrower, any other property or any other persons in any way obligated for, or liable on, the Note and Security Instrument, are expressly reserved by Loan Servicer and Note Holder.

(c)  Borrower has no right of set-off or counterclaim against Note Holder or Loan Servicer, or any defense to the obligations of the Note or Security Instrument.

(d)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e)  If not prohibited by the law of the state(s) where the Property and Borrower are located, all costs, fees, and expenses incurred by or payable to Loan Servicer in connection with this Agreement, including but not limited to property inspection fees and attorney's fees, shall be paid by Borrower to Loan Servicer and, to the extent such costs, fees, and expenses are deferred or become part of the New Principal Balance, shall be secured by the Security Instrument. The type and amount of such costs, fees, and expenses, and the manner in which they are paid by Borrower, are set forth in Schedule "A."

(f)  If not prohibited by the law of the state(s) where the Property and Borrower are located, a modification fee or, alternatively, a document preparation fee, over and above the costs, fees, and expenses set forth in (e) above, shall be paid by Borrower to Loan Servicer, and, to the extent such fee is deferred, shall be secured by the Security Instrument. The type and amount of such fee, and the manner in which it is paid by Borrower, is set forth in Schedule "A."

(g)  The fees, costs and expenses as set forth in subparagraphs 4(e) and 4(f) above shall be deferred until the Loan is paid in full, added to the New Principal Balance, and/or paid by Borrower prior to the Effective Date, all as set forth in Schedule "A."

(h)  In addition to and simultaneously with Borrower's monthly payments of principal and interest as set forth in paragraph 2 above, Borrower shall be required pay to Loan Servicer, until such time as the New Principal Balance and interest are paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Loan Servicer as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Loan Servicer specifically reserves the right, in its sole and absolute discretion, to impose or waive such requirement at any time upon written notice to Borrower.

(i)  Borrower shall make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

5.  Borrower and Loan Servicer understand, acknowledge and agree that:

(a)  Time is of the essence of this Agreement, in particular the receipt by Loan Servicer of this Agreement, fully executed by Borrower and the sums due under subparagraphs 4(e) and 4(f) above.

(b)  Loan Servicer represents that it has the authority to enter into this Agreement on behalf of the Note Holder.



(c)     The terms, clauses, conditions and provisions of this Agreement are binding upon and shall inure to the benefit of all assignees, successors-in-interest, personal representatives, estates, administrators, heirs, devisees, and legatees of each of the parties hereto.

(d)     Except as is otherwise provided for herein, this Agreement (along with the Note and Security Instrument) constitutes the entire agreement between the parties with reference to the subject matter hereof, and supersedes any prior agreement, oral or written, with respect thereto; and, in entering into this Agreement, no party is relying upon any representation, warranty, agreement, or covenants not set forth herein.

(e)     This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

6.     To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to any of Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

7.     This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease collection activities relating to the Loan, unless and until Loan Servicer has received this Agreement, fully executed and initialed by Borrower, no later than May 26, 2010. This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at 4875 Belfort Rd, Bldg 130, Jacksonville, FL 32256 and internally date stamped.

---

**NOTICE TO BORROWERS WITH ADJUSTABLE-RATE LOANS:**

For Borrowers with an adjustable rate Loan, please read this notice carefully. In accordance with subparagraphs 3(a) and 3(b) of this Agreement, you, Borrower, understand that the Loan is modified from an adjustable-rate loan to a step-rate loan. An adjustable-rate loan differs from a step-rate loan. With a step-rate loan, the interest rate stays the same during specified intervals as provided under paragraph 2 of this Agreement. With an adjustable-rate loan, the interest rate changes periodically, in relation to an index and a margin, and payments may go up or down accordingly. **IF INTEREST RATES DECREASE, AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A STEP-RATE LOAN. YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A STEP-RATE LOAN, YOU ARE FOREGOING THIS POTENTIAL ADVANTAGE.**

---

IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below.

American Home Mortgage Servicing, Inc.
By: _____

RICHARD KOSKEY

## Loan Modification Agreement
## Schedule A



Name of Borrower(s): RICHARD KOSKEY
Loan Number: ███████

| DESCRIPTION OF TOTAL | AMOUNT DUE |
|---|---|
| Current Principal Balance | $202,964.45 |
| Total Amount Capitalized | $9,805.04 |
| **NEW PRINCIPAL BALANCE** | **$212,769.49** |

**BALLOON LOAN DISCLOSURES** (if applicable)

| | |
|---|---|
| Amortizing Amount | $212,769.49 |
| Deferment Amount | $0.00 |
| Total Balloon Payment* | $0.00 |

* The Balloon Payment is subject to change if your loan contains a variable rate feature.

### ITEMIZATION OF AMOUNT DUE

| | | | | Deferred Amount | Total Amount Due |
|---|---|---|---|---|---|
| Delinquent/Unpaid Interest | | From | October 1, 2010 | | |
| | | To | March 31, 2012 | $0.00 | $5,959.13 |
| Foreclosure Attorney Fees | | | | $0.00 | $540.00 |
| Foreclosure Costs | | | | $0.00 | $575.79 |
| Interest on Secured Advances | | | | $0.00 | $54.50 |
| Accrued Late Charges | | | | $0.00 | $931.08 |
| Delinquent Taxes/Unpaid Insurance | | | | $0.00 | $2,860.21 |
| **TOTALS** | | | | **$0.00** | **$10,920.71** |
| | Borrower Contribution | | | | $1,115.67 |
| | Mortgage Insurance Contribution | | | | $0.00 |
| | Total Deferred Amount | | | | $0.00 |
| | Amount towards 1st payment due | | | | $0.00 |
| | Total Amount Capitalized | | | | $9,805.04 |

| | |
|---|---|
| New Principal and Interest Payment Effective: ** May 1, 2012 | $918.45 |
| Monthly Tax Payment*** | $181.56 |
| Monthly Insurance Payment *** | $0.00 |
| Monthly Mortgage Insurance Payment | $0.00 |
| **Total Payment** | **$1,100.01** |

** If your loan contains a variable rate feature, your monthly principal and interest payment is subject to change based on the terms of the Note and Modification Agreement.

*** Includes estimated amount for the monthly escrow payment (which is subject to change).

Borrower Initials here _____ _____ _____ _____ _____ _____

8389 09/11

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number ▮▮▮▮▮▮                                   Date: **March 07, 2012**

Borrower(s):    **RICHARD KOSKEY**

Property Address:    **272NE14TH ST, ATLANTA, GA 30309**

Servicer: **American Home Mortgage Servicing, Inc.**

In consideration of **American Home Mortgage Servicing, Inc.** (the "Servicer") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Servicer, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Servicer, to enable Servicer to modify the Loan in accordance with the guidelines, guidance, or required servicing standards ("Servicing Standards") of (a) an investor, note holder, guarantor, or mortgage insurer associated with the Loan, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority, or (b) any Making Home Affordable program, including without limitation the Home Affordable Modification Program.

The Borrower agrees to comply with all such requests made by the Servicer within 30 days of receipt of written request from the Servicer.  Borrower agrees to assume all costs that may be incurred by the Servicer, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable under the Servicing Standards.

_____                    3/8/12
**RICHARD KOSKEY**                                                  Date

_____                    _____
                                                                   Date

_____                    _____
                                                                   Date

_____                    _____
                                                                   Date

2001 03/11                                                   Errors and Omissions/Compliance Agreement

Loan # 
Min #

## LOAN MODIFICATION AGREEMENT
### (Providing for Freeze-Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **1st** day of **April, 2012** (the "Effective Date"), between **RICHARD KOSKEY** (collectively "Borrower") and **American Home Mortgage Servicing, Inc.** as Servicer ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated **August 01, 2006**, and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which covers the real and personal property located at **272NE14TH ST, ATLANTA, GA 30309**, more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower hereto agree that the Note and Security Instrument shall be modified hereby as follows:

1. As of **April 1, 2012**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$212,769.49**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof. The amount that shall bear interest and amortize in accordance with the terms of this Agreement is referred to herein as the "Amortizing Amount," which may be equal to or less than the New Principal Balance, as specified in paragraph 3 below.

2. ***No Personal Liability: Since Borrowers' debts have previously been discharged pursuant to a Chapter 7 bankruptcy and since Borrowers did not sign an agreement reaffirming the Loan, this Agreement is not to be construed as an attempt to collect a debt from Borrowers personally. Borrowers understand and Loan Servicer acknowledges that Loan Servicer has no right and no intention to enforce the Loan against Borrowers and that Loan Servicer's only recourse, if the Loan is not current as set forth in the Loan Documents and this Agreement, is to foreclose on the Property.***

3. Borrower promises to pay the New Principal Balance, plus interest, to the order of Loan Servicer. The interest rate and monthly payment on Borrower's Note, and the applicable interest change dates and payment due dates, are modified as follows:

| Year | New Interest Rate | Interest Rate Change Date | New Monthly Payment Due Date | New Payment Amount | Number of Payments |
|------|-------------------|---------------------------|------------------------------|--------------------|--------------------|
| 1-5  | 2.000%            | April 01, 2012            | May 01, 2012                 | $918.45            | 60                 |
| 6    | 3.000%            | April 01, 2017            | May 01, 2017                 | $1,004.44          | 12                 |
| 7-25 | 3.870%            | April 01, 2018            | May 01, 2018                 | $1,079.31          | 221                |

*plus any amounts due for taxes and insurance, if applicable (see Schedule A).

If the Loan is an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the first New Monthly Payment Due Date indicated above, Borrower should ignore such notice and make payments in accordance with this Agreement. If on **September 1, 2036** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. Borrower will comply with all covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Effective Date:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands, acknowledges and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Note and Security Instrument shall also apply to default in the making of the modified payments under this Agreement.

(b) Except as herein modified, all covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect and none of Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Loan Servicer's or Note Holder's rights or remedies under the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Loan Servicer and Note Holder are presently entitled against the Property, Borrower, any other property or any other persons in any way obligated for, or liable on, the Note and Security Instrument, are expressly reserved by Loan Servicer and Note Holder.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) If not prohibited by the law of the state(s) where the Property and Borrower are located, all costs, fees, and expenses incurred by or payable to Loan Servicer in connection with this Agreement, including but not limited to property inspection fees and attorney's fees, shall be paid by Borrower to Loan Servicer and, to the extent such costs, fees, and expenses are deferred or become part of the New Principal Balance, shall be secured by the Security Instrument. The type and amount of such costs, fees, and expenses, and the manner in which they are paid by Borrower; are set forth in Schedule "A."

(e) If not prohibited by the law of the state(s) where the Property and Borrower are located, a modification fee or, alternatively, a document preparation fee, over and above the costs, fees, and expenses set forth in (d) above, shall be paid by Borrower to Loan Servicer, and, to the extent such fee is deferred, shall be secured by the Security Instrument. The type and amount of such fee, and the manner in which it is paid by Borrower, is set forth in Schedule "A."

(f) The fees, costs and expenses as set forth in subparagraphs 5(d) and 5(e) above shall be (i) deferred until the Loan is paid in full, (ii) added to the New Principal Balance, and/or (iii) paid by Borrower prior to the Effective Date, all as set forth in Schedule "A."

(g) In addition to and simultaneously with Borrower's monthly payments of principal and interest as set forth in paragraph 3 above, Borrower shall be required to pay to Loan Servicer, until such time as the New Principal Balance and interest on the Amortizing Amount are paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Loan Servicer as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Loan Servicer specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to Borrower.

(h) Borrower shall make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

6. Borrower and Loan Servicer understand, acknowledge and agree that:

(a) Time is of the essence of this Agreement, in particular the receipt by Loan Servicer of this Agreement, fully executed by Borrower and the sums due under subparagraphs 5(d) and 5(e) above.

(b) Loan Servicer represents that it has the authority to enter into this Agreement on behalf of the Note Holder.

(c) The terms, clauses, conditions and provisions of this Agreement are binding upon and shall inure to the benefit of all assignees, successors-in-interest, personal representatives, estates, administrators, heirs, devisees, and legatees of each of the parties hereto.

(d)    Except as is otherwise provided for herein, this Agreement along with the Note and Security Instrument constitutes the entire agreement between the parties with reference to the subject matter hereof, and supersedes any prior agreement, oral or written, with respect thereto; and, in entering into this Agreement, no party is relying upon any representation, warranty, agreement, or covenants not set forth herein.

(e)    This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

7.    To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement; as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to any of Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

8.    This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease collection activities relating to the Loan, unless and until Loan Servicer has received this Agreement, fully executed and initialed by Borrower, no later than **March 21, 2012**. This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at **4875 Belfort Rd, Jacksonville, FL 32256** and internally date stamped.

9.    **Advice of Attorney:** Borrowers warrant and represent that: (i) in executing this Agreement they have relied upon legal advice from the attorney of their choice, (ii) this Agreement has been read by Borrowers and such attorney, and its consequences (including risks, complications, and costs) have been completely explained to Borrowers by that attorney, and (iii) Borrowers fully understand the terms of this Agreement.

---

**NOTICE TO BORROWERS WITH ADJUSTABLE-RATE LOANS:**
For Borrowers with an adjustable rate Loan, please read this notice carefully. In accordance with subparagraphs 4(a) and 4(b) of this Agreement, Borrower understands that the Loan is modified from an adjustable-rate loan to a step-rate loan. An adjustable-rate loan differs from a step-rate loan. With a step-rate loan, the interest rate stays the same during specified intervals as provided under paragraph 3 of this Agreement. With an adjustable-rate loan, the interest rate changes periodically, in relation to an index and a margin, and payments may go up or down accordingly.
**IF INTEREST RATES DECREASE, AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A STEP-RATE LOAN. YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A STEP-RATE LOAN, YOU ARE FOREGOING THIS POTENTIAL ADVANTAGE.**

---

IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below.


_Richard Koskey_    3/8/12    _____ (Seal)
**RICHARD KOSKEY** -Borrower / Date


**American Home Mortgage Servicing, Inc.**

By: _____

| Name: | Richard Christopher Koskey | | | | | | |
|---|---|---|---|---|---|---|---|
| **BK Case Number:** | 17-69886-lrc | | | | | | |
| **Filing Date:** | 11/13/2017 | | | | | | |
| **Post First Due:** | 12/1/2017 | | | | **Completed By:** | rswetha | |
| **Post-Petition Due** | **Date Received** | **Amount Received** | **Amount Applied** | **Suspense Application** | **Suspense Balance** | **Comments** | |
| | 12/14/2017 | $    900.00 | | $    900.00 | $    900.00 | | |

| Name: | Richard Christopher Koskey |
|---|---|
| **BK Case Number:** | 17-69886-lrc |
| **Filing Date:** | 11/13/2017 |
| **Completed by:** | **rswetha** |

| Due Date | Total Payment | Principal | Interest | Escrow |
|---|---|---|---|---|
| 12/1/2017 | $ 1,134.57 | $ 571.29 | $ 433.15 | $ 130.13 |
| 1/1/2018 | $ 1,134.57 | $ 572.71 | $ 431.73 | $ 130.13 |
| 2/1/2018 | $ 1,134.57 | $ 574.15 | $ 430.29 | $ 130.13 |
| 3/1/2018 | $ 1,134.57 | $ 575.58 | $ 428.86 | $ 130.13 |
| 4/1/2018 | $ 1,134.57 | $ 577.02 | $ 427.42 | $ 130.13 |
| **Total Due** | **$ 5,672.85** | **$ 2,870.75** | **$ 2,151.45** | **$ 650.65** |

| Optional Products | NOPC Filed Date |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

RICHARD CHRISTOPHER KOSKEY,

           Debtor.

Case No. 17-69886-LRC

Chapter 13

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the April 20, 2018, I served a copy of **Notice of Hearing and Motion for Relief from the Automatic Stay** which was filed in this bankruptcy matter on the April 20, 2018, in the manner indicated:

**The following parties have been served via e-mail**:

Howard P. Slomka
se@myatllaw.com

Melissa J. Davey
mail@13trusteeatlanta.com

**The following parties have been served via U.S. First Class Mail**:

Richard Christopher Koskey
272 14th St NE
Unit 6
Atlanta, GA 30309

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: April 20, 2018

_____
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com